Exchange and Deposit Bank of Owingsville v. Stone, &c.

CASE 22—EQUITY—FEBRUARY 21, 1882.

# Exchange and Deposit Bank of Owingsville v. Stone, &c.

# Whitney, &c., v. Stone, &c.

### APPEALS FROM BATH COMMON PLEAS COURT.

In 1814 Chas. Stone and Matilda, his wife, received a joint conveyance of 103¾ acres of land. Afterward the husband received a conveyance in his own right of 69 acres. He devised the whole tract of 172 acres to his wife during her lifetime. She accepted the devise, and afterwards sold and conveyed the life-estate.

1. *Held*—That the acceptance of the devise was, by operation of law, an abandonment of all claim to the 100¾ acres, except to the estate devised.

2. Purchasers who are prior in point of time have priority as between themselves, so far as payment out of the property is concerned.

3. But when it is ascertained that property sold or mortgaged in parcels to different purchasers is subject to lien or encumbrance, the purchaser who is prior in point of time has no more right to be exempted from payment than the last purchaser, and all must contribute ratably to extinguish the lien.

4. An assignee of a note secured by a lien upon land cannot be deprived of his lien by mistaken or fraudulent conduct in the execution of a conveyance without his consent.

5. An assignee in bankruptcy is not an innocent purchaser for a valuable consideration, although he represents the creditors of the bankrupt.

6. Although the assignee in bankruptcy represents both the bankrupt and his creditors, he cannot acquire for either of them any greater rights than they possessed when his rights as assignee accrued.

On the appeal of the Exchange and Deposit Bank v. Stone, &c.—

R. & W. S. GUDGELL FOR APPELLANT.

1. The 103¾ acre tract was owned and held by Matilda Stone and Charles Stone by a joint deed, and upon the husband's death the widow, as survivor, was seized in fee-simple of the whole. Before the Revised Statutes, a conveyance to husband and wife constituted an estate by the entirety, which neither could sever. (Elliott v. Nicholls, 4 Bush, 455; Rogers v. Grider, 1 Dana, 243; Babbitt v. Scroggin, 1 Duv., 274.)

2. The rule in chancery practice is, that all suits asserting liens upon the same property should be consolidated. (Davidson v. Simmons, 11 Bush, 334; 2 B. Mon., 372.)

.3. The fact that Matilda Stone accepted the devise of her husband as to the 69 acres does not affect her right to the 103 acres. (Bouv. Law Dic., word Privy; 1 Greenleaf, sec. 118.)

V. B. YOUNG AND J. S. HURT FOR APPELLEE STONE, &c.

1. It may be true that the 103¾ acres of land were conveyed to Matilda Stone and her husband Chas. Stone; yet, inasmuch as the husband made a will devising to her not only the land but 69 acres of other land for her lifetime, and she having accepted the will and held both tracts under it, she and all those holding under her are concluded by it. (Story's Eq., chap. 30, p. 1082 to 1086; 5 J. J. Mar., 215; Haydon v. Ewing, 1 B. Mon., 114; 1 Dana, 204.)

2. No person can hold under and in opposition to a will. (2 Bibb, 408; 6 Mon., 635; 3 J. J. Mar., 365; 1 Dana, 203; 1 B. Mon., 114; 15 B. Mon., 565; 7 Bush, 286; 1 Met., 463; 7 Bush, 367; 14 B. M., 162.)

·On the appeal of Whitney, &c., v. Stone, &c.—

REID & STONE FOR APPELLANTS.

1. Stone distinctly agreed to convey and acknowledge the payment of $5,000 if Whaley could arrange with Brown. He did arrange with Brown, and as between vendor and vendee the $2,000 was paid. No lien was retained; none was required. A new contract was made between Whaley and Brown, whereby the lien was waived as to bona fide creditors, and Stone released upon his assignment.

2. The assignee in bankruptcy does not represent the bankrupt alone, but the general creditors also. (2 B. R., 355; Foster v. Harkley, Ib., 406; 3 McLean, 185.)

3. The assignor is not bound by any lien or encumbrance which is not valid against creditors. (11 B. R., 214; 10 Ib., 469; 15 Ib., 150; 4 Ib., 23; S. C. Chase, 227; Bump on Bank., 505.)

·4. Appellees Brown and the Bank cannot occupy a more favorable attitude than L. M. Stone. (Anderson v. Mason, 6 Dana, 217; Hall v. Southwick, 13 Bush, 322.)

J. J. NESBITT AND R. GUDGELL & SON FOR EXCHANGE AND DEPOSIT BANK OF OWINGSVILLE.

John F. Stone could not sell or retain a lien upon lands he did not own, and having no interest in the 103¾ acres, he could not assert a lien upon it. The judgment is, therefore, more favorable to appellants than they are entitled to. The Bank or Brown might complain, but appellant has no ground of reversal.

JUDGE HARGIS DELIVERED THE OPINION OF THE·COURT.

In 1814 Valentine Stone conveyed to Charles and Matilda Stone, jointly, a tract of land containing 100¾ acres.

Subsequently Charles bought several smaller tracts adjacent to it, and treated them as one farm, and when he died in 1840 it contained 169 acres, 1 rood, and 8 poles.

By his will he devised all of his real estate to his wife, Matilda, for life, remainder in fee equally to his ten children.

One of his sons, L. M. Stone, had become the owner, by devise and bargain, of eight tenths in fee of the whole of the farm, when his sister Jane died in 1864 childless, leaving Matilda, her mother, and eight brothers and sisters, as her heirs at law, who inherited one ninth each of her share.

On September 1st, 1869, L. M. Stone purchased from John F. Stone his undivided one tenth in the farm and his one ninth of one tenth which he inherited from Jane, a lien being reserved for the purchase-money.

Thereafter Matilda Stone died intestate, the owner of one ninth of one tenth inherited by her from Jane, leaving said eight brothers and sisters as her only heirs.

After Matilda's death L. M. Stone bought, by executory contract, his sister, Mrs. Moore's, share, it being one eightieth, which she inherited directly, and through her mother, from Jane, for which it does not appear that he paid.

He also purchased and paid for a similar interest of James Stone.

His sister Fannie, who married —— Whaley, died, leaving four children, who were each entitled to one three hundred and twentieth, derived from Jane and their grandmother, Matilda.

From them he purchased their interest, paying Richard and Artemesia in full, but failing to pay John S. Whaley

and Amanda for their interests by $66.44, which was a lien upon them.

His sister Caroline died, leaving one child, who intermarried with Rawlings, by whom she had two children, and died.

He bought the interest, being one one hundred and sixtieth of one of them, on which he paid all but $35; that remained a lien on that interest.

With his title in that state, and the whole farm, subject to the liens named, in his possession, he, having added thereto five acres by purchase from Thompson, conveyed, on the 15th of October, 1869, 14 acres, 3 roods, and 21 poles of it to Mrs. Ellen Wilson, and 41 acres, 3 roods, and 19 poles thereof to George Whitney, and on the 7th of September, 1874, sold the remainder, supposed to contain 121 acres, to Wesley Whaley, by written contract, in consideration of $70 per acre, $3,000 thereof to be paid October 25th, 1874; $2,000 1st July, 1875, and the rest December 25, 1875. It was agreed in the writing that in case the title to some small portions of the land could not be made, Whaley was to retain the purchase price therefor at six per cent. from 1st July, 1875, until the title should be completed, and that either party might survey the land.

On the 27th of the following October Whaley paid $3,000, and executed his notes to L. M. Stone for the land as follows: $2,000 due July 1, 1875; $1,091.17 due December 25, 1875, and $2,479.95 due December 25, 1875.

Stone assigned the two notes first named to the appellee, Brown, and the last named note to the bank, which is appellee on the original appeal, and has also prosecuted an appeal on the same record.

In June, 1875, the land was surveyed, and found to contain 117 acres, 2 roods, and 22 70-100 poles instead of 121 acres, and on the 1st of July Stone conveyed it to Whaley, reciting in the deed the consideration to be $8,234.93; that $5,000 thereof was paid in hand, and $3,234.93 was "to be paid on the 25th December, 1875," and shortly thereafter died.

August 15th, 1876, the bank brought suit on the note held by it against Stone's administrator, Whaley, and Brown, seeking to enforce a lien on the land therefor.

In September following John F. Stone brought his action on a note for $857.53, executed to him by L. M. Stone in consideration of his interest in the land conveyed as above set forth.

These actions were consolidated, and all the parties in interest brought before the court.

It appears at the institution of these actions L. M. Stone had not paid the purchase-money due to John F. Stone, John S. Whaley, Amanda Lancaster, *nee* Whaley, and H. H. Rawlings; nor had he received a conveyance from Mrs. Moore, or paid her for her one eightieth interest; nor had he purchased either of the interests of M. R. and P. R. Stone, which they derived from Jane and their mother; nor had he purchased the one hundred and sixtieth interest of Thos. Rawlings; nor had he bought the one seven hundred and twentieth interest of John F. Stone, which the latter inherited from his mother, after the sale and conveyance of his interests as stated.

By sufficient pleadings the questions now raised by the numerous appellants, were presented to the chancellor, and he adjudged that the liens of John F. Stone, John S.

Whaley, Amanda Lancaster, and H. H. Rawlings, and the interests not conveyed of P. R. Stone, M. S. Stone, Mary Moores, and Thomas Rawlings should be, as incumbrances, apportioned upon the whole tract of 169 acres, 1 rood, and 8 poles, and be borne by L. M. Stone's vendees in the following proportions, to-wit: Whaley, $\frac{18008}{27088}$; Whitney, $\frac{6699}{27088}$, and Mrs. Wilson's heirs, $\frac{2381}{27088}$.

Of that judgment the appellants complain, and the two appeals will be considered together.

We will not examine each assignment of error in detail, as many of them are but the statement, in a different form, of the vital questions which are necessary to be decided.

The order best suited to the chronology and our analysis of the case will be pursued.

It is insisted by counsel for the bank on its appeal that Matilda Stone was vested, by the deed of Valentine Stone, with an inseverable estate, and, as the survivor of her husband, she was entitled to 100¾ acres embraced by the deed.

It was clearly and unmistakably held by this court, before the adoption of the Revised Statutes, that absolute and unqualified conveyances of real estate to husband and wife made them tenants by the entirety, and that neither could so alienate the estate during coverture as to affect the right of the survivor to it. This doctrine is that of the common law, which is based upon the legal unity of husband and wife. (Rogers v. Grider, 1 Dana; Ross v. Garrison and wife, 1 Dana; Babbit, &c., v. Scroggins, &c., 1 Duvall; Croan, &c., v. Joyce, &c., 3 Bush; Elliott, &c., v. Nickolls, &c., 4 Bush.).

And the deed from Valentine Stone, made in 1814, being absolute, without qualification either by its terms or context, and no fraud or mistake in its execution alleged or shown,

certainly would have invested her with title to the 100¾ acres had she not elected to abandon her title and take under the will of her husband, Charles Stone.

By his will he devised to her the whole of his real estate for life.

It appears that the 169 acres, 1 rood, and 8 poles was all the land he possessed or owned at his death, and if she had renounced the will, while she would have held by survivorship the 100¾ acres, she could not have received any of the remainder except one third thereof for dower.

Having taken under the will, she augmented the quantity of land in which she received a life-estate, and she may have considered a life-estate in the whole farm more important to her than a fee in 100¾ acres of it, and a life-estate in only one third of the remainder, and for this reason took under the will.

It is urged, however, that there is nothing in this record which shows that the testator devised her estate, or that she elected to take under the will.

This position is clearly refuted by her own deed to her son L. M. Stone, by which she conveys her interest in the whole of the 169 acres, 1 rood, and 8 poles, described by parcels and metes and bounds in the conveyance.

Upon her election and assertion of title under the will, each of the heirs acted in selling his or her interest to L. M. Stone. None of them claimed or sold anything but a remainder interest in fee, and she warrants only her life-estate in the conveyance to L. M. Stone, which contains not one word expressive of any greater estate in her.

That she believed her husband's will devised the 100¾ acres there is little room for doubt, as she took, held, and conveyed the interest her husband devised to her consistently

with the benefit it confers in consideration, it must be presumed, of the burden it imposes.

Mr. Story says in section 1077, Eq. Juris., that "courts of equity in such cases adopt the rational exposition of the will that there is an implied condition that he who accepts a benefit under the instrument shall adopt the whole, conforming to all its provisions and renouncing every right inconsistent with it."

In the case of Smart v. Easly, 5 John J. Marshall, 215, it was said that the acceptance by a devisee of the devise was, by operation and intendment of law as well as by presumption, in fact an abandonment of all claim to the other property devised by the will.

The act of receiving the benefits or legacies of the will is an election to abide by its provisions, for, by so doing, the devisee may gain more than he would do by renouncing the will and asserting claim against it. See Gore v. Stevens, &c., 1 Dana, in which the following quotation from Maddox's Ch'y, 2d vol., 55, is approved:

"In a case where a widow had conflicting interests under her marriage settlement and her husband's will, and she proved the latter, acted under it, and received rents for six years, she was considered as having made an election."

Matilda Stone and L. M. Stone treated the will as devising the farm on which Charles Stone lived when he devised the whole of his real estate for life to her. She sold and he purchased pursuant to the provisions of the will, and neither he nor his vendees or assignees can be allowed at this late day, after she has enjoyed the benefits of the will and died, to abandon the election so thoroughly demonstrated by the transactions between the beneficiaries under the will, and thereby alter the rights of innocent parties, advancing the

interest of some at the expense and destruction of others whose claims are equally meritorious.

For these reasons the rights of the Bank have not been prejudiced by the judgment disregarding the claim of title in Matilda Stone to the 100¾ acres by survivorship.

As all the land must, therefore, be considered as having been devised by Charles Stone, his devisees, except the wife, each took an undivided and unascertained interest in remainder in every part and parcel and of the whole tract: so that neither could enforce a lien upon any particular portion of the farm before its division, because each held an interest that covered the whole tract, and which they could not be deprived of without their consent.    Hence, it follows that the position of counsel who urge that Whaley so contracted with Stone as to require him to pay off or bear all the encumbrances on his part of the land, is erroneous.

The only provision of the contract bearing upon this point has been substantially quoted, and it provides alone for a retention by Whaley of enough purchase-money to secure him against loss in the event "title to some small portions of the land could not be made."

It turns out that title to some of the land sold to Whaley cannot be made, and the court has respected and enforced the written contract between him and Stone by reducing, in effect, the amount of purchase-money corresponding with the liens and failure of title to the 117 acres, 2 roods, and 22$\frac{70}{100}$ poles, asserted by Stone's vendees against him.    This written agreement only protects Whaley against the liens and defects in his own purchase, and he did not agree to pay or stipulate for the right to reserve purchase-money, for which he executed notes, to discharge or protect himself

from any liens or defects in Whitney's or Mrs. Wilson's pur-chase.

Were they substituted to Whaley's rights, their land would still be subject to the encumbrances, as he has no such rights as would authorize him to pay them off or dis-charge them out of money due the assignees of the notes, who are innocent purchasers for value.

There is no evidence in the record which shows that Whaley's purchase was to bear the burden of all the encum-brances; but, upon the contrary, the written contract is very plain that it was made in contemplation of such encum-brances as the law would fix upon it and no other.

Had this controversy arisen between Stone as the holder of the notes and Whaley, Whitney, and Mrs. Wilson, then the latter could, by proper proceedings, have protected themselves and compelled Stone to have discharged all the encumbrances presented by lien or title-holders; but how Whitney and Mrs. Wilson's heirs can ask in equity that pur-chasers as innocent as they shall bear a greater proportion of the liens upon a common tract of land, from which they have all purchased a part and paid for it, we are unable to see by the light of any law within the range of our investi-gations.

The Bank and Brown, having paid Stone for the notes, stand precisely in the attitude Whaley would have occupied had he paid Stone in full before discovering any encum-brances upon the land, and in the attitude that Whitney and Mrs. Wilson's heirs now stand.

The authorities in Kentucky, the modern English cases and text-writers, agree that the original encumbrance or lien ought to be borne ratably between the subsequent pur-chasers or encumbrancers according to the relative values of

the estates.  Upon principle this seems to be just, for pur-chasers or encumbrancers who are prior in point of time have a superiority of right as between themselves, so far as payment out of the property is concerned, upon foreclosure, when no original encumbrance appears; but when it is ascer-tained that property mortgaged or sold in different parcels to purchasers was subject to a lien or encumbrance, it can-not be reasonably said that the one prior in point of time has any more right to be exempted from the encumbrance than the last purchaser, because both purchased when the encumbrance existed, and had equal opportunity to know that neither could take the property free from the encum-brance.  If only one purchase the whole property, it would be subject to the original burden; so, if two or more pur-chase the whole property in different parcels, it would still be subject to the original encumbrance, simply because the separate purchase of distinct parcels is made with construct-ive knowledge that the whole property is bound, and not with the understanding that the first purchaser will be pro-tected from the prior encumbrance by a failure upon the part of a second to do that which he neglected to do him-self.

In Dickey v. Thompson, 8 B. M., 312, where the authori-ties upon this subject are reviewed, it was declared to be no longer an open question in this court that the purchasers of different parcels of mortgaged estate should contribute to the removal of the burden ratably, after first exhausting the residuum, if any, remaining in the hands of the mortgagor himself, unless bad faith were practiced.

The court below did right in refusing to estimate the value of the several parcels purchased by Whitney, Mrs. Wilson, and Whaley at the price agreed to be paid, the rule being

that the value at the time of foreclosure of the liens is the proper criterion for apportionment.

For an exposition and application of these principles, see Story's Eq., sec. 1233*d*, note 2, and authorities cited.

Brown, at the instance of Stone, and with the knowledge and concurrence of Whaley, bought and paid for the note held by him, and unless it were shown that Brown intended to release the lien, or waived his right to assert it by consenting to its omission from the conveyance made by Stone to Whaley, he cannot be deprived of his right to the lien by their mistaken or fraudulent conduct or oversight in its execution.    (4th Bush, 168; 6th Bush, 662; Story's Eq., sec. 1224.)

The mere taking of additional security would not of itself, aside from the intention of the party, amount to waiver of his lien, as the intention governs in such cases. (4th B. M., 132; 6th B. M., 72–'3.)    And in this case no additional security was taken by Brown; he continued to look to Whaley, the original and only payor, and to the land for payment.    The identity of the purchase-money has never been lost, but it is capable of an exact ascertainment. The agreement, therefore, of Whaley with Brown to pay ten per cent. interest, a larger rate than the note had borne, without any intention upon the part of either of removing the lien, was no waiver of it.    (Muir v. Cross, &c., 10th B. M., 284.)    This is not a case where additional security has been taken, but one where the obligor and his general creditors seek to destroy the only security the holder of the note possesses.

The facts upon which the position is taken are insufficient to sustain it.    Brown neither participated in the making of the deed, nor consented to the omission from it of a lien for .

his share of the purchase-money, nor was the increased interest intended to alter the evidence of the debt or waive the lien.   And the effort to deprive him of his lien does not present itself in a court of equity with much grace in face of the facts that Brown was not consulted about how the deed was to be made; that the amount of his note was carefully excluded from the sum of the purchase-money which was named in the deed as unpaid, and no additional security was ever attempted or intended to be given him by Stone or Whaley.   And we conclude that their voluntary action should not be allowed to prejudice his lien, which would otherwise be unquestionable. ·

As to the doctrine that the claim of the assignee in bankruptcy, who was appointed for Whaley during the pendency of this litigation, in behalf of the general creditors, has priority over Brown or the Bank, the authorities are decidedly against its soundness.

It is laid down by Mr. Story in sec. 1228 of his work on Equity Jurisprudence—speaking of the extent *bona fide* purchasers for valuable consideration are affected by the vendor's lien, says: ''The lien will also prevail against assignees claiming by a general assignment under the bankrupt and insolvent laws, and against assignees claiming under a general assignment made by a failing debtor for the benefit of creditors ; *for, in such cases, the assignees are deemed to possess the same equities only as the debtor himself would possess.*''

What equities has Whaley shown against Brown's untainted and unsatisfied lien?   None whatever.   And in a contest between them alone, Brown in equity and good conscience would and ought to prevail.

In the case of Bayley v. Greenleaf, 7th Wheaton, Chief Justice Marshall laid down the rule thus:

"The lien of the vendor, if in the nature of a trust, is a, secret trust, and is to be preferred to any subsequent equal. equity unconnected with a legal advantage or equitable advantage which gives a superior claim to the legal estate.'" And it was held by the English court, in Mitford v. Mitford, 9th Vesey, which is supported by many like cases, that an assignment in bankruptcy passes the rights of the bankrupt. precisely in the same plight and condition as he possessed. them, subject to all equities enforceable against him. In speaking of "title subject to equities," Bump on Bankruptcy, 10th ed., page 500, in his analysis of the authorities in this country under the last bankrupt law, says that "the assignee takes the property of the bankrupt subject to all legal and equitable claims of others," and that "he is affected by all the equities that can be urged against the bankrupt."

Chief Justice Church held, in Kelly v. Scott, that the debtor, being estopped from denying the rights of an attaching creditor, the assignees of the debtor were also estopped, because "they have no other or superior rights to him, and they are vested with the property subject to all equities against it in his hands." (49th N. Y.)

In Lazeas v. Porter, assignee, 7th Reporter, 216, the Supreme Court of Pennsylvania said that "the estate taken by the assignee is precisely that of the bankrupt."

Assignees in bankruptcy are not innocent purchasers for a valuable consideration in the same sense that ordinary purchasers for value without notice are, for the former do not. part with their money or property as a consideration for, and therefore become the absolute owner of the thing or property assigned, but the latter do, and they have the superior merit of contracting for and paying the value of

the property, the title to which the law vests absolutely in them on that account.

The merits and rights of such purchasers are not equal, and the distinction between their rights is founded in justice and sustained by authority. (5 Ark., 492; 5 Ill., 427; 20th Vt.; 2 Story, 334, 630; 9th B. R,, 433; 106 Mass., 334; 18 Wallace, 332), and many other cases not necessary to cite.

We are of opinion that the assignee Jones, while he represents the creditors, can acquire for them no greater rights than they themselves could have enforced before the assignment, and that he holds the estate of the bankrupt Whaley just as the latter held it, subject to the lien of Brown, who may be said not only to possess an equitable but a legal lien for his debt.

There is nothing in the contract or deed, had the latter been drawn according to the rights of the parties, between Stone and Whaley, that authorizes the inference that one part of the purchase-money was to be regarded as secured by an inferior or secondary lien to that of any other, and certainly the conduct of the parties have not changed the relative positions of the liens for the purchase-money. The judgment is in accord with these views, and it is therefore affirmed upon the appeals of Whitney and others v. Stone, &c., and of the Exchange and Deposit Bank of Owingsville v. Stone and others.