CASE 62—PETITION EQUITY—DECEMBER 6.

# Kentucky National Bank, &c., v. Louisville Bagging Company.

98 371
109 27
98 371
120 230

APPEAL FROM JEFFERSON CIRCUIT COURT, CHANCERY DIVISION,

1. ASSIGNMENTS FOR CREDITORS—RIGHTS OF LIEN CREDITORS.—As an assignee for the benefit of creditors takes no greater interest than the assignor had, lien creditors can not be prejudiced by the assignment.

2. COSTS OF SUIT TO SETTLE TRUST.—Where the assigned estate is incumbered to its full value the costs of a suit brought by the assignee to settle the trust can not be paid out of the estate.

3. THE ASSIGNEE IS NOT ENTITLED TO COMMISSION for selling personal property for which creditors held warehouse receipts as security, the sale being made in opposition to the wishes of the pledgees, the pledged property not being sufficient to pay their debts.

HUMPHREY & DAVIE, STROTHER & GORDON AND W. B. DIXON
FOR APPELLANTS.

The chancellor erred in taking any part of the proceeds of the sale of
this property in lien to appellants for the payment of the attorn-
ey's fees of appellee, as assignee, or of any costs or expenses in
this case except so far as the court costs are directly incident to
the enforcement of the rights of appellants. (In matter of ac-
counting of Dean, 86 N. Y., 398; Lithauer v. Royle, 17 N. J. Eq.,
40; 2 Jones on Mortages, sec. 1708; Upperton v. Harrison, 7 Sim-
ons, 444; Tipping v. Power, 1 Hare, 405; Barnes v. Racester, 1
Young & Collier, 401; Dighton v. Withers, 31 Bevan, 423; Aldredge
v. Westbrook, 5 Bevan, 188; Wild v. Lockhart, 10 Bevan, 320; Carr
v. Henderson, 11 Bevan, 415; Riddell v. Hudgins, 58 Fed. Rep.,
494; Louisville Savings, Loan & Building Co. v. Sterrett's ass'ee,
16 Ky. L. R., 62; Campbell v. Thirlwell, 11 Bush, 163.)

An assignee for the benefit of creditors stands in the shoes of
his assignor and takes no property rights or interests except such
as the assignor had. (Exchange Deposit Bank v. Stone, 80 Ky.,
109; Trustee v. Barber, 80 Ky., 329.)

THOMAS F. HARGIS FOR APPELLEES.

Where the action is instituted by the assignee to enforce the trust,
the costs should be paid out of the proceeds of the whole estate
whether liens exist on it or not, and a reasonable attorney's fee
should be allowed. (Dobyns v. Dobyns, 79 Ky., 95; Civil Code,
secs. 428, 438; Story's Equity, secs. 1037-8 and 1036; Hill on Trus-
tees, sec. 851; Burrill on Assignments, 511; 12 Bush, 673; Fleming
v. Wilson, 6 Bush, 611; Loth & Haas v. Carty, &c., 85 Ky., 597.)

JUDGE PAYNTER DELIVERED THE OPINION OF THE COURT.

On the 2d day of March, 1891, the Louisville Bagging
Manufacturing Company made a deed of trust to the Fidel-
ity Trust and Safety Vault Company, by which it mortgaged
to that company certain real estate and machinery, to secure
bonds payable to bearer, amounting to fifty thousand dollars.

The principal part, if not all, of these bonds were held
by the appellants, the Kentucky National Bank, the Mer-
chants National Bank and the National Bank of Cynthiana.

This deed of trust created a first lien upon the property. To secure various notes which the Louisville Bagging Company owed the banks named and the Louisville Banking Company, it pledged various lots of bagging. On certain bagging not pledged to the banks an execution, in which Ella Dolan was plaintiff, was levied. There was but little property owned by the bagging company which was not covered by the liens mentioned, which amounted to many thousand dollars more than the value of its assets. While in this insolvent condition, to-wit, on July 21, 1892, it made a deed of assignment to the Louisville Trust Company of all its property in trust for the benefit of its creditors. On the 24th day of August, 1892, the trustee instituted this action to settle the trust.

On the 12th of September, 1892, it procured an order by which appellants were enjoined from appropriating any of the assets of the Louisville Bagging Company in payment in whole or in part of the respective claims, except as the court might order, and from prosecuting an action for that purpose. The bagging pledged to the appellants was ordered sold; however, the order provided that all valid liens on any of the property sold should attach to the proceeds of the sale thereof.

The court also reserved the question as to what part of the assets should be charged with the costs of such sale.

The property mortgaged and pledged to secure the payment of the debts which the Louisville Bagging Manufacturing Company owed the appellants was insufficient to pay them.

The validity of the claims of appellants was conceded in the petition filed to settle the trust and the property upon which the liens existed described therein. The banks held the warehouse receipts.

The appellants being enjoined from appropriating the property pledged to the payment of their debts, and from bringing suits to enforce their liens, they were compelled to answer in this case, which they did, setting up their respective claims.

The banks holding the warehouse receipts after the assignment sought to have the Louisville Trust Company turn over to them the property on which they were issued to pay their debts, but this effort failed. The trust company insisted on its right to have, and did obtain from the banks, the warehouse receipts.

The property outside of that which was mortgaged, pledged and in lien was insufficient to pay the expenses of this suit and some other expenditures made by the trustee. To cover the deficiency the court adjudged that the appellants should pay it, because they had received the proceeds of the property upon which they held a first lien.

The question for review on this appeal is as to correctness of that judgment.

The sums allowed by the judgment of the court are as follows:

Attorneys' fees for bringing suit to settle trust....$1,500 00
Commissioner's fee for stating accounts, etc...... 200 00
To Louisville Trust Company, 5 per cent. on $13,-
   875.00 bagging pledged to and sold Merchants
   National Bank ............................ 643 89
To Louisville Trust Company, 5 per cent. on $4,024.-
   86, proceeds of bagging sold, which was pledged
   to Kentucky National Bank.................. 201 24
To Louisville Trust Company, 5 per cent. on $1,353.-
   57, proceeds of bagging pledged to Louisville
   Banking Company ......................... 67 68

To Commissioner H. V. Loving ................$  433 85·
To Louisville Trust Company for care of property.   200 00·
Expenses taking care of property, etc............ 1,050 33

It is adjudged that the bondholders should pay $2,958.96.. Of the total amount of costs and expenses adjudged, $912.81 is commission allowed the Louisville Trust Company on the sale of the bagging pledged to the banks.

The Merchants National Bank purchased the bagging which was pledged to it, and the trustee never received or disbursed any part of the proceeds.

The banks were represented by attorneys in the case.

The exceptions filed by the banks to the commissioner's report questioned the right to allow attorneys' fees, the commissioner's fee for making report as to state of accounts, the 5 per cent. commission on the proceeds of the pledged bagging sold, and in ordering that the trustee be reimbursed $210.10.

When an estate is assigned and the trustee accepts the trust, he takes the property with all valid liens and encumbrances on it. The trustee receives no greater interest in the property than the assignor possessed. (Exchange and Deposit Bank v. Stone, 80 Ky., 109; Bridgeford, trustee, v. Barbour, &c., 80 Ky., 529.)

"The assignee succeeds only to the rights of the assignor, and is affected by all the equities against him, and * * * takes the property subject to all equities. He takes subject to all existing liens, charges and set-offs." (Burrill on Assignments, section 349.)

Certainly no subsequent mortgagee, vendee or volunteer· acquires equal or superior rights in property to those under a valid prior mortgage. The mortgagor could not make a sale of the property so as to affect a valid lien on it. His

ability to affect such liens is not increased when he becomes insolvent and seeks the aid of another to help appropriate his property to the payment of his debts. He can not by an assignment impart a character to the claims of other creditors which will enable them to appropriate the property to the prejudice of a holder of a valid lien.

If the claims of the creditors can not affect the rights of the holder of a valid lien, and the assignor can only vest the trustee with such interest in the property as he possesses, certainly the trustee can not in his effort to pay unsecured debts, and if possible save something for the assignor, incur costs in such effort that can be paid out of the proceeds of the property upon which the lien existed so as to deprive the lien-holder of the amount of such costs.

When a trustee in an assignment for the benefit of creditors accepts the trust, he must understand that he takes it subject to encumbrances. If he rushes into court to settle the trust, he must know there are sufficient assets to pay the costs of the suit. If the estate is encumbered to its full value, he must know that he can neither realize anything for the unsecured creditors or his assignor.

A trustee may invoke the aid of a court of equity in the settlement of his trust. If there is no estate except that which is bound to pay preferred creditors, it follows that there are no assets out of which to pay the expenses of such a suit, and he should not go into court and incur costs. The court could not confer a right on the trustee to appropriate any of the property on which the lien existed to the payment of such costs to the prejudice of the holder. Primarily it is not the province of a court to grant rights, but to enforce those which exist.

There was no question as to the correctness of the several

claims of the banks, nor was there any as to the liens on the property.  From the facts as they appear in the petition the trustee must have known the mortgaged and pledged property was insufficient to pay the encumbrances on it, therefore the action was not instituted, nor was it prosecuted, in the interest of the lienholders.   The banks should not have been ordered to pay attorneys' fees to the attorneys of the trustee.   Neither should they be charged with the commissioner's fees for auditing accounts, as his services were not essential to aid the banks in the enforcement of their liens. The principal work done by the commissioner as to the claims of the banks was to make a statement of their claims, so as to show what part of the expense of this action the bondholders and what part the pledgees should pay.   We do not think the banks should be charged with any part of the commissioner's fee in making the report as to accounts, etc.

The banks desired to hold their warehouse receipts and have the bagging for which they were given by the warehousemen turned over to them.   This the trustee refused to permit.   This bagging was sold for less than $20,000, while the claims it was pledged to pay amounted to more than that sum.   The Merchants National Bank purchased the bagging pledged to it, for which it gave over $13,000, and the same was applied to its debt.   The trustee never received or disbursed anw part of this sum, still it was allowed a commission of 5 per cent. on that amount, to be paid by the bank.

Although it is claimed the trustee was acting for the banks in this matter of selling the bagging, as a matter of fact the trustee was acting in opposition to their wishes by refusing to turn over to them the pledged bagging and

in forcing a sale of the property, and in endeavoring to compel them to pay his commissions out of property in which they had practically the entire interest. In what the trustee was doing in the matter, it must be regarded as acting in the interest of the unsecured creditors and the assignor. However, in no event was the assignee entitled to commission on the sale of this bagging for which the pledgees were responsible.

It does not appear from this record that the over-disbursement of $210.10 was to the banks, as they do not seem to have received more than they were entitled to out of the proceeds of the property mortgaged and pledged to them; therefore, the court should not have ordered that the banks reimburse the trustee.

In the Matter of the Accounting of Robert J. Dean as Assignee, &c., 86 N. Y., 398, it appeared that a man named Fry made an assignment for the benefit of his creditors to a man named Dean. The property was mortgaged for $40,000. At the time of the assignment an inventory of the property was made by the assignee, and the value fixed at $28,000. The assignee took possession and ran the business at a loss of $1,000. Afterward he sold the property subject to the mortgage for one dollar. The mortgagee became the purchaser. The assignee claimed he should be allowed commission upon the entire value of the mortgaged property. The court held he should have commission upon the one dollar received by him for the property, "which was all the value thereof to the trust estate."

In Lithauer v. Royle, 17 New Jersey, Eq. Rep., (2 C. E. Green), 40, it appears there were three mortgages. Suit was brought by the holder of the third mortgage to enforce his

lien, to which he made the holders of the prior mortgages parties. They set up their claims. The proceeds were insufficient to pay the first mortgage. The plaintiff claimed he was entitled to costs out of the proceeds. The court held this could not be done, because to burden the fund with costs was to defeat the just claim of the first mortgagees and lead to gross abuses in practice.

In speaking on the same subject, in Jones on Mortgages, volume 2, section 1708, it is said: "Of course it may happen that a subsequent mortgagee, after having incurred costs of suit and of sale, may lose these as well as his demand also, as when the proceeds of sale are only sufficient to pay the debt and costs due to the first mortgagee; but this was the risk assumed by taking the subsequent encumbrance. This rule seems best adapted to secure the rights of the parties, and it is well established both in our courts and in those of England." These cases are cited to show that courts will not allow persons acquiring a subsequent interest in the property to incur costs or expenses, so as to impair or diminish the security of the first lienholder.

It is insisted that under the provisions of chapter 3, title 10, Civil Code of Practice, and as interpreted in Dobyns v. Dobyns' assignee, 79 Ky., 95., the trustee had the right to bring the action to settle the trust; and, having done so, the costs of the suit should be paid out of the trust estate. That is to say that they have priority over the mortgage liens existing when the deed was made.

While trustees may bring an action to settle the trust, still there is nothing in the provisions of the Code which indicates that in such action the rights of lienholders are to be impaired, or that the court should appropriate property which the assignor had placed in lien before the trustee acquired any interest in it to the payment of costs incurred by such

trustee.    If the trustee brings such action, he certainly. takes the hazard of producing a fund which is liable to the payment of the costs he may incur.

Counsel for appellee cites Burrill on Assignments and Hill on Trustees, wherein it is stated that all necessary expenses of the assignee are to be reimbursed to him out of the estate.    As a general principle this is correct.

While theoretically the entire property embraced in the deed is the trust estate, practically the trust estate is nothing but the interest the assignor held in the property when the deed was made.    This interest does not include the rights which he had previously granted to a mortgagee.

Newport & Cincinnati Bridge Company v. Douglass, trustee, &c., 12 Bush., 673, is cited by appellee to sustain its contention.    We do not think the case is applicable.    In that case the trustees were made such in the mortgages to secure bonds which were issued by the railroad company.  They represented the debtor as well as the creditors, and were the agents of the parties in interest.    The court very properly held they were entitled to compensation for the services of themselves and counsel.

The trustees in that case occupied the position that the Fidelity Trust and Safety Vault Company occupied in this case if it rendered any services, etc.

The only case cited which at first blush seems to sustain the contention of counsel for appellee is Loth & Haas v. Carty, &c., 85 Ky., 591.    In that case it appears that Mrs. Carty asserted a lien for rent.    Loth & Haas claimed a lien in virtue of a mortgage on the stock of merchandise, including such goods as were added to the stock after the execution of the mortgage.    Gallahue, a creditor, attached the goods.    On the same day the debtor, Varty, made an assignment for the benefit of his creditors.    The trustee brought a

suit to settle the estate.    There was a contest among the parties asserting liens on the property.    Neither the amount of the debts nor of the fund appears, but the court held Mrs. Carty's debt should be paid out of the proceeds of the property in the hands of the trustee, and said: "Nor do we think it was error for the court to order the expenses of settling the trust to be paid out of this fund, because they were *necessary* to the settlement of the trust and rights of the various creditors, including appellants."    It does not appear who objected to the payment of the expenses.    The court placed it upon the ground that the expenses were necessary to the settlement of the trust and rights of the creditors. They may not have amounted to more than the creditors would have been compelled to pay in the enforcement of their liens.

It was proper for the banks to pay the court costs for filing pleadings, making orders enforcing their liens and the fees of the commissioner making the sales, and also the taxes and insurance on the property upon which they held liens, and the expenses in taking care thereof.    They would have been compelled to incur these costs and expenses if no suit had been brought to settle the trust by the trustee.

The judgment is reversed, with directions that further proceedings be had in conformity with this opinion.