## Trimble & Bell v. Acme Mills Co.

(Decided January 15, 1913.)

### Appeal from Christian Circuit Court.

1.  Corporations—Allowance to Attorney for Stockholders of Insolvent Corporation—What Fund Payable Out of.—Where all the property of a corporation was in lien to secure bonds issued by it, an attorney for a stockholder who brought a suit to have the corporation placed in the hands of a receiver because of its insolvency, and to have its affairs settled up, was not entitled to be compensated for his services out of the fund in lien for the benefit of the bond holders, but if there is any fund to which the stockholders are entitled, their attorneys may be paid out of this fund.

2.  Corporations—Attorney Fees—When Payable Out of Fund Set Apart for Bond Holders.—When a corporation conveys its property to a trustee for the benefit of the bondholders, the attorneys representing the trustee in the settlement of the affairs of the corporation when it becomes insolvent are entitled to reasonable compensation, to be paid out of the trust fund.

3.  Commissioners—Fees of.—Sections 396 and 1740 of the Kentucky Statutes prescribe the manner in which commissioners' fees shall be allowed and the amount thereof, and these statutes must be followed by the court in the allowance of compensation to master commissioners.

SELDEN Y. TRIMBLE, DOUGLASS BELL and TRIMBLE & BELL, for appellants

O. H. ANDERSON, W. T. FOWLER and DOWNER & RUSSELL, for appellees.

OPINION OF THE COURT BY JUDGE CARROLL—Reversing.

In January, 1910, the Acme Mills & Elevator Company hereinafter called the Mills Company, a corporation doing business at Hopkinsville, issued $200,000 of twenty year bonds, and to secure the payment of these bonds and the semi-annual interest thereon, it executed a deed to the Planters Bank & Trust Company conveying to it, as trustee for the holders of the bonds, all of its property, "covering and including any and all property, real, personal or mixed, hereinafter to be acquired by said company, except stock in trade."

It was also provided in the deed that the mills company should deposit with the trustee semi-annually a

sum sufficient to pay the accrued interest on the bonds, and further provided, that in the event the mills company failed for a period of 120 days to pay the semi-annual interest, then, and in that event, the whole of the principal of the outstanding bonds should, at the option of the holders, become due and the trustee be authorized, on request of the holders of a majority of the bonds, to take possession of the property conveyed to it as trustee and institute such proceedings as might be necessary to wind up the affairs of the company. It was further provided that, if such proceedings were instituted, there should be first paid out of the proceeds realized from the sale of the property the expenses incurred in the proceeding and in the execution of the trust.

The mills company paid the semi-annual interest due on June 15, 1910, but defaulted in the payment of the interest due in January, 1911, and on the 29th day of March, 1911, Mrs. J. L. Harpole, the owner of seven shares of the capital stock of the mills company, brought a suit in the Christian circuit court against the mills company, the trustee, and a number of the directors and bond-holders, for the purpose of winding up the affairs of the company.

The petition averred that in the fall of 1910, and before January, 1911, the mills company had become totally insolvent, and had virtually ceased to carry on business, and was not, when the suit was brought, and had not been for some months before that time, a going concern. She prayed for the appointment of a receiver to take charge of the property, and for a settlement of all the business affairs of the mills company, and for all other proper relief.

On May 15, 1911, after the expiration of 120 days from the January interest period, the trustee, in obedience to the request of the majority of the holders of the bonds, brought a suit in the same court, setting up the default of the mills company in the payment of the interest due in January, 1911, and asked for a sale of the property t. satisfy the bonds, and for such other relief as might be necessary and proper in the premises. At the same term of the court, after the filing of these two suits, Trimble & Bell, attorneys for the trustee, entered a general demurrer to the Harpole petition, and moved the court to set aside the order, which had been made on motion of Mrs. Harpole's attorney, on the first day of the term, appointing a receiver. The court overruled

the demurrer of the trustee, and made an order, over the objection of the trustee, consolidating the actions filed by it and Mrs. Harpole, and directing that they should be tried and heard together, and also set aside the order appointing the receiver, and directing him to surrender to the trustee all the money and property that he had received.

After this a judgment was entered directing a sale of the property to satisfy the mortgage held by the trustee, and under this order a sale of all the property and effects of the mills company was made for the sum of $73,710, which was not near sufficient to pay the bonded indebtedness of the mills company, leaving nothing for the stockholders. Sometime after this the court allowed to O. H. Anderson, as attorney for Mrs. Harpole, $600; to John B. Chilton, the commissioner for the court, $500; to Trimble & Bell, attorneys for the trustee, $250, and to the Planters Bank & Trust Company, trustee, $400, and directed that these allowances be paid out of the funds in the hands of the trustee or commissioner.

From the judgment making these allowances, Trimble & Bell and the Planters Bank & Trust Company, as trustee, prosecute this appeal. They insist that the allowance to Anderson was made payable out of the fund realized from a sale of the property mortgaged to the trustee for the benefit of the bond-holders, and that no allowance should have been made to Anderson payable out of this fund. They also contend that Chilton, as Master Commissioner, should only have been allowed $162.23, and that Trimble & Bell should have been allowed $1,578. No complaint is made of the allowance to the trustee. For convenience we will treat these allowances separately, taking up first the one to O. H. Anderson, attorney for Mrs. Harpole.

In disposing of this allowance it is well to keep in mind that all the property of every description owned by the mills company was conveyed to the Planters Bank & Trust Company, as trustee, for the benefit of holders of bonds issued by the mills company, and that the proceeds of the sale of all the property so mortgaged was not nearly sufficient to pay the bond holders. It is also proper to notice that Anderson represented a stockholder who did not and could not, under the circumstances, receive anything from the proceeds of the sale of the property set apart for the benefit of the bond holders and that the suit for the stockholder was instituted a

few weeks before a suit could be brought under the provisions of the trust deed by the trustee for the purpose of winding up the affairs of the mills company and having its property sold for the benefit of the bond holders.

The question whether a stockholder of an insolvent corporation, that has virtually abandoned the conduct of the business it was organized to carry on, may bring a suit for the purpose of having its affairs placed in the hands of a receiver preliminary to a sale, is raised by counsel, but in the view we have of the only questions necessary to be disposed of, it is not necessary to extend this opinion in a discussion of the rights of stockholders occupying the position of Mrs. Harpole to bring the character of suit brought by her. For if it should be conceded that Mrs. Harpole had a right to institute her action, it does not follow that her counsel is entitled to be compensated for his services out of the fund to which the bond holders were entitled.

The property ordered to be sold, was set apart in the trust deed as a fund for the protection of the bond holders, and it is clear that no part of the fund realized from the sale could be applied to the payment of stock holders until after the bondholders had been satisfied. The rights of the stockholders were subordinate to the rights of the bondholders, and this being true, it would seem to follow that this fund could not, by indirection, be applied to the benefit of the stockholders by appropriating it to pay their attorneys. If the stockholders themselves could not, under the circumstances of this case, touch any part of this fund, we are unable to perceive upon what principle an attorney for the stockholders can take any part of it to the prejudice of the rights of the bondholders.

It is true that by the ruling of the lower court the judgment and sale of the property was ordered in the action by the stockholder and not in the action brought by the trustee for the bondholders. But this ruling does not affect the status of the parties or give to the stockholders rights they would not otherwise be entitled to. Action was taken by the trustee for the bondholders as soon as it could have been done under the condition of the trust. There was no effort at delay, and the trustee did not do anything that in the slightest degree tended to prejudice the rights of the stockholders. Nor does the mere incident that the suit of the stockholder was first brought give to the stockholder or her attorney any

preference or advantage that she would not have had if the suit had been brought after the action was instituted by the trustee. Of course the institution of the action by the trustee did not prevent the stockholders from also instituting a suit to obtain such relief as the stockholders were entitled to, but the right to institute the suit did not carry with it the right to divert from the bondholders a fund to which they were entitled.

A question analogous to the one here presented came up in Kentucky National Bank v. Louisville Bagging Co., 98 Ky., 371. In that case the Louisville Bagging Company executed a deed of trust by which it mortgaged certain property to secure bonds issued by it. It also pledged certain personal property to other creditors, the result being that virtually all the property owned by the bagging company was in lien to secure the bondholders and certain creditors. With this condition existing the bagging company became insolvent and made a general deed of assignment for the benefit of all its creditors, and under this deed of assignment the trustee brought a suit to settle the estate. The property of the bagging company was not sufficient to pay the lien creditors, but the court directed paid, out of the funds covered by the lien, attorney fees to the attorneys for the assignee. To the allowance of these fees the lien creditors excepted, insisted that the court could not take funds upon which they had a lien and divert them to the payment of fees to the attorneys representing the assignees. In upholding this contention the court said:

"When a trustee, in an assignment for the benefit of creditors, accepts the trust, he must understand that he takes it subject to incumbrances. If he rushes into court to settle the trust, he must know there are sufficient assets to pay the costs of the suit. If the estate is incumbered to its full value, he must know that he can neither realize anything for the unsecured creditors or his assignor.

A trustee may invoke the aid or a court of equity in the settlement of his trust. If there is no estate except that which is bound to pay preferred creditors, it follows that there are no assets out of which to pay the expenses of such a suit, and he should not go into a court and incur costs. The court could not confer a right on the trustee to appropriate any of the property on which the lien existed to the payment of such costs to the prejudice of the lien holder.' * * * * While trustees may

bring an action to settle the trust, still there is nothing in the provisions of the Code which indicates that in such action the rights of lien holders are to be impaired, or that the court should appropriate property which the assignor had placed in lien before the trustee acquired any interest in it to  the payment of costs incurred by such trustee.  If the trustee brings such action he certainly takes the hazard of producing a fund which is liable to the payment of the costs he may incur.''

It seems to us eminently right and proper that the rule laid down in this case should be applied here, and therefore, the court should not allow the attorney for the stockholders any fee payable out of the funds set apart for the bondholders.

We find, however, an issue of fact made in the briefs of counsel as to whether or not the allowance to Anderson was made payable out of the funds to which the bondholders were entitled.  Counsel for Mrs. Harpole insist that this allowance was made out of the funds to which the bondholders were not entitled and upon which they had no lien.  On the other hand, counsel for the trustee say that this allowance was made out of funds belonging to the bondholders.  The order of court making the allowance does not state what fund it was made payable out of, nor does the record clearly or satisfactorily show what fund, if any, was realized in the settlement of the estate that the bondholders did not have a lien on, or that the stockholders would be entitled to.  If in the settlement of the estate any fund was realized to which the stockholders in the class with Mrs. Harpole were entitled, her counsel should be allowed a reasonable fee out of this fund, and on a return of the case the court should definitely ascertain what fund, if any, there is to which the stockholders such as Mrs. Harpole, are entitled to, and if there is such a fund, he may allow out of it to Anderson a reasonable fee.

The next question is the allowance of $500 to the Commissioner for services rendered in the settlement of the estate.  Section 396 of the Kentucky Statutes provides that: ''No allowance in any case shall be made to a commissioner or receiver until he has filed in court a written statement, under oath, of the number of days he has acted; and in all cases evidence may be heard for and against an allowance,'' and in section 1740 of the statutes may be found a scale of fees to which commissioners and receivers are entitled.  Under these statutes

the court, unless by agreement of all parties in interest, is not authorized to make an allowance to a commissioner until he has filed the statement required by section 396, and, when this statement is filed, the court is limited in making an allowance by the schedule of fees provided for in section 1740. Russell v. Avritt, 19 Ky. L. R., 202; Wathen v. England, 102 Ky., 537; Garr v. Roy, 20 Ky., L. R. 1697; Morgan v. Wickliffe, 24 Ky., L. R. 1039; Hely v. Hoertz, 26 Ky., L. R. 1016.

It does not appear from the record, nor is it suggested by counsel in brief, that the commissioner filed the statement referred to, nor does the record show that he performed services entitling him to the compensation allowed. It follows from this that the order allowing the commissioner $500 was error, but on a return of the case the commissioner should, after complying with section 396, be allowed such compensation as the services rendered entitled him to under the statute.

The remaining question is the inadequacy of the allowance of the fee of $250 to Trimble & Bell, attorneys for the trustee. That these attorneys were entitled to reasonable compensation, to be paid out of the fund realized from a sale of the trust property set apart for the bondholders is settled by the terms of the trust deed. The only question then is, what fee should they have? They asked a fee of 2 per cent on the amount realized from the sale, which would be, in round numbers, $1,500. The reasonableness of this fee was vouched for by a number of attorneys practicing in the court in which the allowance was made, and we think that under ordinary circumstances the fee asked would be entirely reasonable.

The fees of attorneys are to be regulated in a large measure by the character of service they render, the amount in controversy and the benefits their clients derive from their service. Morehead v. Anderson, 125 Ky., 77, and in considering the allowance these attorneys should have, we have concluded to fix it at $1,000. We are influenced to name this low sum by the fact that the bondholders, who must pay it, sustained great loss by the failure of the mills company and aside from the mere settlement of the estate there was little difficulty in winding up the affairs of the corporation.

Wherefore, the judgment is reversed, with directions to proceed in conformity with this opinion.