# E. B. Anderson, Assignee, Daviess County Bank & Trust Company v. VanRensselaer, Assignee of T. S. Anderson, et al.

(Decided May 2, 1919.)

## Appeals from Daviess Circuit Court (Two Appeals).

1. Assignments for Benefit of Creditors—Preferences.—The preference given creditors of an assignor by the last clause of section 74 of the statutes is only upon debts which the assignor owed in his trust capacity, and does not extend to a personal obligation of the assignor upon which there was a contingent liability upon his part to the trustor, but which never accrued.

2. Assignments for Benefit of Creditors—Discretion.—Sections 90 and 96 of the statutes expressly confer upon county and circuit courts a sound judicial discretion to permit claims to be filed or not which are presented by a creditor of an assignor more than three months after the time fixed for their presentation and before a final distribution, and such discretion was not abused by the chancellor in this action in refusing to permit claims to be filed nearly nine years after such date, when to have done so would have been prejudicial to the rights of the assignee and other creditors.

3. Assignments for Benefit of Creditors—Cemeteries.—Where a public cemetery was a part of the assigned property, and was held under title which necessitated its operation, it was not error for the court to charge to a separate cemetery fund the allowance to the assignee for his services in managing and directing the operation of same, until it could be sold advantageously, even though an undivided interest therein was in lien and there were unincumbered assets, since it was an unavoidable expense if there had been no suit for a settlement.

W. P. SANDIDGE for appellant.

C. W. WELLS, W. FOSTER HAYES, L. P. TANNER and W. T. ELLIS for appellees.

OPINION OF THE COURT BY JUDGE CLARKE—Affirming.

On May 21, 1908, T. S. Anderson executed and delivered to appellee a deed of assignment for the benefit of his creditors and upon June 5, 1908, this action for a settlement of the assigned estate was instituted by the assignee against the creditors, the appellant being made a defendant. On June 12, 1908, all creditors, including appellant, were enjoined from prosecuting their claims

except in this action and were required by order to properly present their claims herein on or before August 1, 1908.

Appellant, pursuant to that order, filed numerous claims, including one for $3,000.00, which we shall refer to as the Tyler claim, and which was allowed, but the claim to preference was denied, and the correctness of this denial is the first question raised by this appeal.

On February 17, 1917, appellant, for the first time, presented claims aggregating more than $100,000.00 on numerous notes executed by various persons and payable to the assignor, which he had previous to the date of his general assignment discounted to appellant's assignor, Daviess County Bank & Trust Company, for value and in due course. These claims the trial court refused to allow and of that order appellant is also complaining here.

The remaining question presented by this appeal is whether the court erred in charging to the "Cemetery Fund" an allowance of $500.00 a year to the assignee for his services in operating, pursuant to the court's orders, the Elwood Cemetery, owned and assigned by the assignor.

We shall dispose of these three questions separately and in the above order.

1. Mrs. Matilda Tyler was a sister of the assignor and for his accommodation executed to him a note for $3,000.00, which he endorsed to appellant. Thereafter she died, leaving a will in which assignor was named as executor, and as such he settled her estate, accounting for all moneys in his settlement made in the county court about a year after his assignment, but this $3,000.00 had not been paid, and in the settlement he acknowledged a contingent indebtedness to her estate in the amount thereof, although her estate had not paid the note nor does it seem ever to have been proven, presented or asserted as a claim against her estate. Appellant is asserting it here against the assigned estate of the payee and endorser, who was the real obligor, as a preferred claim under that portion of sec. 74, Kentucky Statutes, which provides "that debts due by the assignor as guardian, committee, trustee, &c., or as personal representative, shall be paid in full before the general creditors receive anything."

This provision plainly safeguards specified trust funds held by an assigned trustee, for the purposes of the trust, even though commingled with his personal funds or converted by the trustee, but this is all it does; so the question is whether assignor's liability *to the appellant* upon the Tyler note is his own personal liability, or a liability as the personal representative of Mrs. Tyler. If the former, it is not a preferred claim, and only if the latter is it within the statute. Plainly it was assignor's personal liability and as executor he held no funds liable for the note, either actually or constructively, for it was not and had never been even his duty as an individual to pay the amount to his testator or her personal representative, since the claim never having been proven or presented to him as executor, and being the real obligor himself, Mrs. Tyler having executed the note simply for his accommodation, his duty and obligation to all parties was to pay the appellant. In other words his contingent liability to her estate has never matured into an actual indebtedness.

The supposed analogy upon which counsel for appellant relies to sustain his contention, does not obtain between this case and the authorities cited by him, since the *debt* is not a preferred one, and hence there is no preference to which he can be subrogated; the circumstance that would have preferred it never having happened.

For application of the rule as stated in 37 Cyc. 426, and as applied in the cases cited, the debt must be one entitled to preference on account of its character. Such character is attained under the statute only when trust funds held by the assignor are subject to the payment of the debt, which is not the case here. Hence the claim is not within the purview of the statute, and the court did not err in rejecting the claimed preference.

2. To the claims filed for the first time Feb. 17, 1917, by appellant, the appellee filed exceptions, pleading therein as a bar that more than five years, the applicable statutory limitation period, had elapsed from maturity before the date upon which they were filed. To avoid this plea appellant urges the fact that five years had not elapsed before this suit was filed; and that as the assignment created an express trust, the time that elapsed after the suit was filed must be excluded in estimating the limitation period. This presents a vexatious question upon which the authorities in this jurisdiction are hopelessly tangled

(see Biggs v. Lex. & B. S. R. Co., 79 Ky. 470; Barnes v. Green, 3 Ky. L. R. 253, 11 Ky. Opinion, 236; Dugan's Admr. v. Mitchell, 5 Ky. L. R. 150; Pearce v. Mann, 10 Ky. L. R. 448; Feighey v. Feighey's Admr., 12 L. R. 557; Bryson's Admr v. Biggs, 32 Ky. L. R. 159, 104 S. W. 982, and Richardson v. Chanslor's Trustee, 103 Ky. 425) and which we shall not now attempt to decide, because for another reason the chancellor's judgment rejecting these claims must be upheld.

In utter disregard of the court's order directing claims to be proven and filed on or before August 1, 1908, appellant, though a party to the suit from the beginning, did not present these claims until nine years thereafter, and then without explanation or excuse for this delay beyond the original statutory period of limitation, during which time the major portion of all funds available to general creditors had been distributed.

By sec. 90 of the statutes, an assignee is required within two months after his appointment to give notice of the time and place where he will receive claims, and that "any creditor failing to present at the time named or within three months thereafter his claim" properly verified "shall be deemed to have waived his right to any part of the assigned estate; but the court may direct the assignee to receive the claim at any time before the final distribution of the estate and allow the same and pay dividends thereon as other claims, if there is sufficient unappropriated assets in his hands." This section plainly refers to the powers of the county court and duties of the assignee, where no suit has been filed in the circuit court for a settlement as here, but sec. 96 of the Statutes, by an amendment of March 16, 1898, confers all the power and authority theretofore conferred upon the county court upon the circuit court. Hence the chancellor had the judicial discretion to permit them to be filed or not, when these claims were so tardily presented; and assuming but not deciding they were not barred by statutory limitation, a clear case of laches is presented because it is certain that the assignee after so long a time would not have been able to ascertain the facts and determine as well as he could have done at the proper time, whether the claims were subject to just defense; and besides the assignor, the notes having been placed upon the footing of bills of exchange by having been discounted at bank, had been released long since from lia-

bility to a personal judgment against him by the five year statute of limitation, and the assigned estate, if liable, had lost by the same route its right of recourse against the payors, many of whom could have been made to pay, possibly, if proceeded against seasonably. Moreover appellant it appears holds life insurance policies as security covering in part at least these claims, which would have to be exhausted before participating with the general creditors; the major portion of the estate had been distributed, and the residue was about ready for final distribution. To have permitted the filing of these claims, thus injecting many new issues, as each note offered a possibility of protracted litigation, would have necessitated further delay in obtaining a final settlement of the estate, to the great prejudice of the other creditors who for so long a time had been patiently attempting in obedience to the court's orders to bring the matter to a close. We are therefore quite sure the chancellor did not abuse the sound judicial discretion expressly conferred upon him by statute, in rejecting these claims.

3. One item of the property assigned was the Elmwood Cemetery, which contains about 40 acres, and which was and is the principal place of burial for residents of the city of Owensboro and vicinity. The assignor had held and operated this property as a cemetery since 1878, when he acquired it by deed which required its continued operation for such purposes.

These facts being brought to the court's attention almost immediately after the suit was filed by the assignee, he was by order directed to continue to operate the cemetery, and later the court, upon evidence that the prepared portions of the tract available for burial purposes had been exhausted, ordered the assignee to have the necessary work done to prepare another large portion of the tract and to lay it off in sections and lots with necessary roads, water mains, etc., to make it available. Both appellee in his petition and appellant in his answer, &c., asked that this tract of land be sold. Early in the proceeding a verbal offer of $15,000.00 was made to the assignee, which he reported to court, but the offer was withdrawn when the party making it was asked to make it in writing. Nothing further was done looking to an earlier sale than was made, and all parties seem to have acquiesced in assignee's continued management, operation and improvement of the property. The prin-

cipal source of income was from the sale of lots and the issuance of burial permits, and the income from all sources from this property was sufficient to pay expenses of its operation, improvement, &c., and something more. These receipts and expenditures were kept separate from other funds of the assigned estate in a fund known as the "Cemetery Fund." After eight years' operation and improvement by the assignee under the direction of the court, the property was sold as a whole at a public sale for $30,000.00.

Appellant had a lien upon an undivided three-fourths of the property, to secure assignor's notes amounting to $15,000.00, the remaining one-fourth being unincumbered. The assignee was allowed by the court $500.00 a year or $4,000.00 for his eight years' service in the management and operation of the cemetery property, and there is no objection to the allowance; but appellant insists it should have been charged to the general fund and not to the "Cemetery Fund," as was done.

This expense, until a sale could be made, was necessary, as assignee's deed made the operation as a cemetery obligatory, to the preservation of appellant's lien on the undivided three-fourths of the property and the general creditors' interest in the whole; it also seems to have been justified by the sale at $30,000.00 in the end rather than $15,000.00 or less, at the beginning, and profitable to both the preferred and general creditors, because the expenses of operation and improvement were paid out of its revenues. If the cost of management ought not to have been paid out of the receipts, we can not see why all other expenses connected with its operation should not have been paid out of the general fund, but appellant objects only to the cost of management being charged against this particular fund, which got all the benefit therefrom. If appellant's contention is sound then the general creditors practically lost to the holder of the lien on the undivided three-fourths, their one-fourth by the eight years' management and improvement which enhanced the value of the property from less than $15,000.00 to $30,000.00, because it would take about, if not all, of the one-fourth to pay the whole expense of operation. Manifestly this would have been unjust to the general creditors and so glaringly so if carried to its logical extent, that appellant has not asked it. Ordinary

expenses of settlement must be borne by the general assets, where there are such assets, as is the case here, and the assignee, who is primarily the representative of general creditors, can not impose costs and expenses by settlement proceedings upon incumbered property to the impairment of the lien-holder's security. Kentucky National Bank v. Louisville Bagging Co., 98 Ky. 371, 33 S. W. 101; Sumrall v. Vanarsdall's Admr., 11 S. W. 311; Trimble & Bell v. Acme Mills Co., 151 Ky. 570, 152 S. W. 561.

But in each of these cases it was held that the property in lien must bear insurance, taxes, repairs and expenses of taking care thereof; that is, such costs and expenses as the lienholder would have been compelled to incur if no suit had been brought by the trustee to settle the estate.

Certainly under the circumstances here, the lien-holders would have been compelled to have incurred their proportion of the expenses of operating the cemetery until it could be sold, even if there had been no suit for a settlement of the assigned estate, and some one would have had to have been delegated to operate it, since their lien was taken under a title and subject to rights of lot owners that would not permit of its being closed up. Only if the property in lien had brought more than the lien debts, and then only the excess, could have been subjected to their portion of this expense.

Judgment affirmed.